# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL CASTELLINO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 11-261 |
| | ) Judge Nora Barry Fischer |
| M.I. FRIDAY, INC., and | ) |
| MARK I. FRIDAY, an individual, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**I.  Introduction**

This matter comes before the Court on a motion for summary judgment filed by the Plaintiff. (Docket No. 34). For the reasons that follow, that motion will be denied.

**II.  Background**

M.I. Friday, Inc. ("M.I. Friday"), performs masonry construction work and related services at various commercial, industrial and residential sites. (Docket Nos. 36 & 38 at ¶ 3). Most of the sites are located in Pennsylvania, Ohio, West Virginia, Maryland or New York. (*Id.* at ¶ 4). M.I. Friday's "annual gross volume of sales made or business done" exceeds $500,000.00.[1] (*Id.* at ¶ 2).

Mark I. Friday ("Friday") is the sole owner and President of M.I. Friday. (*Id.* at ¶¶ 1, 5). His responsibilities include the operational management of projects performed by M.I. Friday. (*Id.* at ¶ 6). Friday is responsible for hiring and firing M.I. Friday's employees. (*Id.* at ¶ 7). He also establishes the wage rate paid to each employee. (*Id.* at ¶ 8).

---

[1] 29 U.S.C. § 203(s)(1)(A)(ii).

M.I. Friday's organizational hierarchy includes project managers who report directly to Friday. (*Id.* at ¶ 14). Foremen typically report to a project manager and supervise the work performed by laborers. (*Id.* at ¶¶ 15, 21). Project managers have the authority to direct the work performed by foremen and their subordinates at M.I. Friday's work sites. (*Id.* at ¶ 16).

Daniel Castellino ("Castellino"), a bricklayer, started working for M.I. Friday during the summer of 2005. (*Id.* at ¶¶ 10, 13). He was hired to work as a foreman. (*Id.* at ¶ 12). Gino Virgilli ("Virgilli") worked as one of M.I. Friday's project managers. (*Id.* at ¶ 17). In that capacity, Virgilli generated a "Masonry Foreman's Guide." (*Id.* at ¶ 18). The Masonry Foreman's Guide instructed all foremen to engage in proper planning for their respective work assignments. (*Id.* at ¶ 19). Castellino was placed under Virgilli's supervision shortly after being assigned to the "Providence Point" job site in Pittsburgh, Pennsylvania. (*Id.* at ¶ 20). As a foreman, Castellino was required to prepare the work schedules for individuals under his authority. (*Id.* at ¶ 27).

M.I. Friday expected its laborers to arrive at their work sites thirty minutes before their scheduled start times. (*Id.* at ¶ 22). Foremen were required to complete timesheets detailing the hours worked by laborers under their supervision. (*Id.* at ¶ 23). The timesheets were submitted to M.I. Friday's payroll clerk. (*Id.* at ¶ 24). M.I. Friday utilized the timesheets to determine the number of hours worked by its hourly employees. (*Id.* at ¶ 25).

During the course of his employment with M.I. Friday, Castellino submitted timesheets on his own behalf. (*Id.* at ¶ 33). When he first started, his timesheets accurately reflected the time that he had worked on a given workday. (*Id.*). Castellino was later instructed not to record more than eight hours of work for a single weekday. (*Id.*). After receiving this instruction, Castellino recorded eight hours of work on his timesheets for days on which he had worked extra

hours. (*Id.* at ¶ 34). He received overtime pay only for hours worked on Saturdays and Sundays. (*Id.*). Castellino's employment with M.I. Friday ended in 2010. (Docket No. 37-2 at 6).

Castellino commenced this action against M.I. Friday on February 25, 2011, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA") [29 U.S.C. § 201 *et seq.*]. (Docket No. 1). On September 9, 2011, Castellino filed an amended complaint and named Friday as an additional defendant.[2] (Docket No. 19). Castellino filed a motion for summary judgment on March 27, 2012, contending that M.I. Friday and Friday were liable under the FLSA as a matter of law for failing to compensate him for the overtime hours that he had worked on weekdays. (Docket No. 34). That motion is the subject of this memorandum opinion.

### III. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will

---
[2] Castellino sought and obtained leave to file the amended complaint. (Docket No. 15).

bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. *Celotex Corp.*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV. Discussion

The FLSA was enacted in order to "protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). The "maximum hours" provision of the FLSA, which is codified at 29 U.S.C. § 207(a), provides that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Violations of this provision can be redressed in a civil action brought in a federal or state court of competent jurisdiction. 29 U.S.C. § 216(b). Castellino alleges that M.I. Friday violated § 207(a) by failing to compensate him for work that he performed in excess of forty hours during the course of several workweeks. (Docket No. 19 at ¶¶ 11-18).

A.      **Individual Liability Under the FLSA**

The FLSA defines the term "employer" broadly enough to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The term "person" is defined as "an *individual*, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a)(emphasis added). Given the broad reach of these definitions, the provisions of the FLSA extending liability for unpaid wages to "employers" have been construed to impose liability upon individuals as well as entities. 29 U.S.C. § 216(b); *Hewett v. Willingboro Board of Education*, 421 F.Supp.2d 814, 817, n. 4 (D.N.J. 2006); *Kilvitis v. County of Luzerne*, 52 F.Supp.2d 403, 412-414 (M.D.Pa. 1999). An individual who meets the FLSA's definition of the term "employer" is jointly and severally liable for any unpaid wages owed by the employing entity itself. *Dole v. Haulaway, Inc.*, 723 F.Supp. 274, 286-287 (D.N.J. 1989). In determining whether an individual is an "employer" subject to the provisions of the FLSA, a court must consider whether the individual has the power to hire and fire the aggrieved employee, whether he or she supervises or controls the employee's work schedule and conditions of employment, whether he or she determines the rate and method of the employee's compensation, and whether he or she maintains the employee's employment records. *Haybarger v. Lawrence County Adult Probation & Parole*, 667 F.3d 408, 418 (3d Cir. 2012). An individual's status as an "employer" depends upon the "totality of the circumstances," and no single factor is alone dispositive of the issue. *Id.*

It is undisputed that Friday is the sole owner and President of M.I. Friday. (Docket Nos. 36 & 38 at ¶¶ 1, 5). During a deposition, Friday testified that he was directly involved in M.I. Friday's day-to-day operations, that he had the authority to hire and fire M.I. Friday's employees, and that he was responsible for determining the employees' rates and methods of

5

compensation. (Docket No. 37-1 at 6-7). He acknowledged that he had personally hired Castellino. (*Id.* at 7). Under these circumstances, it cannot be doubted that Friday qualifies as an "employer" within the meaning of the FLSA, and that he is personally liable for any unpaid wages owed to Castellino by M.I. Friday. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-972 (5th Cir. 1984); *Donovan v. Agnew*, 712 F.2d 1509, 1510-1511 (1st Cir. 1983). The Court does not understand Friday to argue otherwise.[3] (Docket Nos. 39 & 49).

## B. The Exemption for "Executive" Employees

The United States Supreme Court has admonished that the FLSA's exemptions "are to be narrowly construed." *Mitchell v. Kentucky Finance Co., Inc.*, 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Such exemptions are limited to those employees "plainly and unmistakably" falling within their "terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). An employer seeking to rely on an exemption must prove its application as an affirmative defense. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-197, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Walling v. General Industries Co.*, 330 U.S. 545, 547-548, 67 S.Ct. 883, 91 L.Ed. 1088 (1947). Matters relating to the duties performed by employees present questions of fact. *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 558-559 (3d Cir. 2006). The ultimate determination as to whether a particular exemption is applicable presents a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986).

Pursuant to 29 U.S.C. § 213(a), a covered employer need not provide overtime pay to "any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman . . . ." 29 U.S.C. § 213(a). The "capacity" in which an

---

[3] M.I. Friday did not oppose Castellino's motion for leave to add Friday as a defendant. (Docket Nos. 15 & 18).

6

individual is employed is determined pursuant to a "functional" inquiry accounting for his or her "responsibilities in the context of the particular industry" in which he or she works. *Christopher v. Smithkline Beecham Corp.*, 2012 WL 2196779, at *11, 2012 U.S. LEXIS 4657, at *36 (2012). The critical question in this case is whether Castellino qualifies as a "bona fide executive" employee within the meaning of § 213(a)'s exemption.[4] The FLSA does not define that term. Instead, it delegates that task to the United States Secretary of Labor.[5] *Id.*

The Secretary has promulgated 29 C.F.R. § 541.100(a), which provides:

> **§ 541.100  General rule for executive employees.**
> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

---

[4] Although the Defendants repeatedly refer to the "professional exemption," they specifically rely on the regulation defining the term "employee employed in a bona fide executive capacity" in support of their argument that Castellino was an exempt employee. (Docket No. 39 at 4-5). In any event, Castellino's work as a bricklayer clearly placed him beyond the scope of the exemptions for "administrative" and "professional" employees. In order for an individual to be an "administrative" employee, his or her primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). The exemption for "professional" employees is limited to individuals whose primary duties "[r]equir[e] knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," or whose primary duties "[r]equir[e] invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300(a)(2)(i)-(ii). In light of these regulatory definitions, the Defendants cannot reasonably argue that Castellino was an exempt "administrative" or "professional" employee.

[5] Hilda L. Solis presently serves as the Secretary of Labor. Meet Secretary of Labor Hilda S. Solis, http://www.dol.gov/_sec/welcome.htm (as visited on June 20, 2012).

29 C.F.R. § 541.100(a). Between March 2008 and June 2010, Castellino's weekly rate of pay incrementally increased from $1,176.00 to 1,248.80.[6] (Docket Nos. 36 & 38 at ¶ 29). The applicable collective bargaining agreement classified foremen as "management employees for purposes of discharging their duties" and provided them with "the authority to hire or discharge masons at [their] discretion." (Docket No. 38-1 at 6). As a foreman, Castellino regularly directed the work performed by "two or more other employees."[7] 29 C.F.R. § 541.100(a)(3). The critical question is whether Castellino was compensated on a "salary basis." 29 C.F.R. § 541.100(a)(1).

Subsection (b) of § 541.100 incorporates definitions for certain phrases used in subsection (a). 29 C.F.R. § 541.100(b). The phrase "salary basis" is defined at 29 C.F.R. § 541.602(a), which provides:

> **§ 541.602 Salary basis.**
> (a) *General rule*. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

---

[6] Castellino contends that his "hourly" wage incrementally increased from $29.40 to $31.22 between March 2008 and June 2010. (Docket No. 36 at ¶ 29). Although the Defendants argue that Castellino was a "salaried" employee, they accept his numerical figures as the correct "hourly wage rate" used to determine his "salary computation." (Docket No. 38 at ¶ 29).

[7] The timesheets completed by Castellino indicate that, at any given time, he had anywhere from four to twenty-eight employees under his authority. (Docket No. 37-5 at 1-38).

29 C.F.R. § 602(a). The Defendants argue that Castellino was a salaried employee within the meaning of this regulation. (Docket No. 39 at 7). This contention is based on the idea that Castellino was paid a "predetermined" amount of money for his work, and that his rate of pay was not tied to "variations in the quality or quantity of the work performed." (*Id.*). Castellino maintains that he was paid strictly on an "hourly basis," and only for the number of hours actually worked within the span of a given week. (Docket No. 35 at 11-12).

It is undisputed that the terms of Castellino's compensation were contained in a written agreement signed by the parties, and that the written agreement cannot be located. (Docket No. 37-2 at 20; Docket No. 38-1 at 1, ¶ 2). Under a prior regulation, an individual's status as a salaried employee was determined by specific reference to the terms of his or her "employment agreement." *Auer v. Robbins*, 519 U.S. 452, 455, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)(quoting the previous regulation appearing at 29 C.F.R. § 541.118(a)). That changed on August 23, 2004, when § 541.602 went into effect. *Baden-Winterwood v. Life Time Fitness*, 566 F.3d 618, 627 (6th Cir. 2009); *Monroe Firefighters Association v. City of Monroe*, 600 F.Supp.2d 790, 795-796 (W.D.La. 2009). Under the new regulation, an individual's status as a salaried employee depends on the manner in which he or she is actually compensated, regardless of what he or she is owed under the applicable "employment agreement." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847-848 (6th Cir. 2012). For this reason, the absence of the written agreement does not preclude the Defendants from asserting that Castellino was an "executive" employee within the meaning of § 213(a).

During a deposition conducted on February 18, 2011, Friday testified that Castellino had been paid at the approximate rate of $33.12 per hour. (Docket No. 37-1 at 8). Friday responded in the affirmative when asked whether Castellino had been paid an "hourly wage." (*Id.*). In a

subsequent affidavit dated April 26, 2012, Friday stated that Castellino had been hired to work as a "salaried foreman." (Docket No. 38-1 at 1, ¶ 3). Explaining his earlier testimony concerning an "hourly wage," Friday asserted that Castellino's weekly "salary" had been computed by taking the hourly amount earned by a bricklayer under the collective bargaining agreement, adding additional money to that amount, and multiplying the total by forty.[8] (*Id.* at 1-2, ¶ 4). Friday further declared that Castellino had been provided with additional compensation "at the rate of one and one-half times the hourly rate" for hours worked on Saturdays and Sundays. (*Id.* at 2, ¶ 7)(hyphen added).

Although Castellino described himself as an "hourly" employee, he acknowledged that he had been paid "over the wage rate" ordinarily paid to bricklayers. (Docket No. 37-2 at 4). Castellino also testified that he had received overtime pay for hours worked on weekends. (*Id.* at 16-17). Nevertheless, he stated that during his time under Virgilli's supervision, he had been paid only for the number of hours actually worked between Monday and Friday, even when he had worked less than eight hours during the course of a particular workday. (*Id.* at 14).

The documentary record confirms that Castellino sometimes recorded more than eight hours for specific workdays on his timesheets. (Docket No. 37-5 at 1-38). Those timesheets covered the period of time commencing in November 2008 and ending in August 2009. (*Id.*). When Castellino completed his timesheets covering May 2010 and June 2010, he did not record more than eight hours for any particular workday.[9] (*Id.* at 39-44). He reported that he had

---

[8] The Court does not consider Friday's affidavit to be a "sham affidavit." Friday's testimony describing Castellino's rate of pay as "hourly" could reasonably be understood to mean that Castellino's salary was calculated in accordance with an "hourly" rate. (Docket No. 37-1 at 8). While the distinction between payment on an "hourly" basis and payment on a "salary" basis is significant for purposes of the FLSA, the distinction is not necessarily understood by laypersons. The clarification contained in the affidavit cannot be disregarded. *Smith v. Johnson & Johnson*, 593 F.3d 280, 285, n. 3 (3d Cir. 2010)(permitting consideration of an affidavit that differs from the affiant's earlier deposition testimony where there is "a legitimate reason for the discrepancies between the deposition and the affidavit").

[9] The eight-month gap between September 2009 and April 2010 is not explained by the parties.

worked for only four hours on May 11, 2010. (*Id.* at 40). Castellino testified that, at some point, Friday and his project manager[10] had instructed him not to record more than eight hours on his timesheet for a given workday. (*Id.* at 15-16). Castellino further stated that, from that point forward, he had recorded eight hours of work for days on which he had actually worked for nine or ten hours. (*Id.* at 16).

Under the Secretary's regulations, "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement," provided that "the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 U.S.C. § 541.604(a). The applicable regulation specifically provides that the exemption is not lost if a salaried employee "also receives additional compensation based on hours worked for work beyond the normal workweek." *Id.* Consequently, the fact that Castellino was paid on an hourly basis for work performed on Saturdays and Sundays does not undermine the Defendants' contention that he was a salaried employee.

A careful review of the record reveals that, rightly or wrongly, the amount of Castellino's weekly paycheck was frequently tied to the number of hours that he had worked during the week for which compensation was provided. The record contains copies of numerous checks in which the amount of Castellino's weekly pay appears to have been reduced due to his failure to work at least forty hours between Monday and Friday.[11] (Docket No. 37-4). Payroll records provided by M.I. Friday confirm that the amount of Castellino's pay was sometimes decreased because of his

---

[10] It is not clear whether Virgilli was the project manager referenced in Castellino's testimony. (Docket No. 37-2 at 15-16).
[11] The checks bear the dates of June 30, 2008, July 30, 2008, September 17, 2008, October 29, 2008, March 11, 2009, April 1, 2009, October 7, 2009, December 31, 2009, January 27, 2010, February 24, 2010, March 10, 2010, and June 17, 2010. (Docket No. 37-4 at 1-26).

11

failure to work an eight-hour day. This occurred fifteen times between August 6, 2009, and May 11, 2010.[12] (Docket No. 43 at 6-9).

The fact that Castellino did not receive his full compensation for days on which he had worked less than eight hours is significant in light of 29 C.F.R. § 541.602(b)(1), which provides:

> **§ 541.602 Salary basis.**
> \*\*\*
> (b) *Exceptions*. The prohibition against deductions from pay in the salary basis requirement is subject to the following exceptions:
> (1) Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability. Thus, if an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

29 C.F.R. § 541.602(b)(1). This regulation clearly prohibits an employer from reducing the amount of a salaried employee's pay based on his or her failure to work an eight-hour day.[13] *Mathews v. Bronger Masonry, Inc.*, 772 F.Supp.2d 1004, 1011 (S.D.Ind. 2011)(recognizing that an employee whose pay is decreased because of partial-day absences is not a salaried employee under the Secretary's regulations). In a "supplemental verification" dated May 11, 2010, Friday stated that his payroll clerk had mistakenly reduced the amount of Castellino's pay for days on which he had worked less than eight hours. (Docket No. 43 at 2-3, ¶ 4).

---

[12] The relevant dates are August 6, 2009, September 28, 2009, October 2, 2009, October 9, 2009, October 15, 2009, December 1, 2009, December 4, 2009, December 24, 2009, December 31, 2009, January 21, 2010, February 5, 2010, February 16, 2010, February 18, 2010, March 31, 2010, and May 11, 2010. (Docket No. 43 at 6-9).
[13] The Court focuses on deductions for Castellino's partial-day absences because the Secretary's regulations expressly permit deductions for full-day absences, provided that the absences are attributable to a salaried employee's need "to handle personal affairs." 29 C.F.R. § 541.602(b)(1). If deductions were made because of full-day absences occasioned by the unavailability of work at M.I. Friday's work sites, Castellino can also rely on those deductions to support his contention that he was an hourly employee. 29 C.F.R. § 541.602(a).

The Defendants concede that the deductions referenced in its payroll records were improper. They nevertheless argue that Castellino was an exempt employee under 29 C.F.R. § 541.603, which provides:

**§ 541.603  Effect of improper deductions from salary.**
(a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.
(b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. Employees in different job classifications or who work for different managers do not lose their status as exempt employees. Thus, for example, if a manager at a company routinely docks the pay of engineers at that facility for partial-day personal absences, then all engineers at that facility whose pay could have been improperly docked by the manager would lose the exemption; engineers at other facilities or working for other managers, however, would remain exempt.
(c) Improper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions.
(d) If an employer has a clearly communicated policy that prohibits the improper pay deductions specified in § 541.602(a) and includes a complaint mechanism, reimburses employees for any improper deductions and makes a good faith commitment to comply in the future, such employer will not lose the exemption for any employees unless the employer willfully violates the policy by continuing to make improper deductions after receiving employee complaints. If an employer fails to reimburse employees for any improper deductions or continues to make improper deductions after receiving employee complaints, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. The best evidence of a clearly communicated policy is a written policy that was distributed to employees prior to the improper pay deductions by, for example, providing a copy of the policy to

employees at the time of hire, publishing the policy in an employee handbook or publishing the policy on the employer's Intranet.
(e) This section is not to be construed in an unduly technical manner so as to defeat the exemption.

29 C.F.R. § 541.603. The Defendants maintain that the deductions made to Castellino's pay were "inadvertent" within the meaning of § 541.603(c). (Docket No. 49 at 2). The record indicates that, on March 17, 2010, M.I. Friday issued a check to Castellino in the amount of $1,155.14. (Docket No. 43 at 9). The Defendants contend that the check was issued in order to compensate Castellino for a "payroll error." (*Id.* at 2, ¶ 3).

Castellino argues that the Defendants waived the defense of "inadvertence" by failing to plead it in their answer. (Docket No. 46 at 2). In their answer to the amended complaint, however, the Defendants averred that Castellino had agreed to be paid on a salaried basis.[14] (Docket No. 20 at ¶ 32). Castellino does not contend that this averment was insufficient to preserve the exemption available under § 213(a) in a more general sense. The exemption's operation is dependent upon how the term "executive" is "defined and delimited from time to time by regulations of the Secretary." 29 U.S.C. § 231(a)(1). By preserving the exemption for "executive" employees, the Defendants necessarily preserved any "defenses" available under the regulations defining that term.

Confronting the Defendants' "inadvertence" defense more directly, Castellino asserts that M.I. Friday had an "actual practice" of making improper deductions. (Docket No. 46 at 3-4). He contends that the number of improper deductions was too numerous to permit a finding that M.I. Friday intended to pay him on a salary basis. (*Id.*). The "number of improper deductions" is certainly an important factor in determining whether the pattern at issue constitutes an "actual

---

[14] The actual averment reads as follows: "It is believed and therefore averred that Plaintiff agreed that he would be paid on a forty hour week basis, whether working or not or whether a particular work day had more than eight hours of work." (Docket No. 20 at ¶ 32).

practice." 29 C.F.R. § 541.603(a). The critical inquiry, however, turns on an employer's actual intent. *Yourman v. Giuliani*, 229 F.3d 124, 130-131 (2d Cir. 2000). The applicable regulation clearly provides that the exemption is lost "if the facts demonstrate that the employer did not *intend* to pay employees on a salary basis." 29 C.F.R. § 541.603(a)(emphasis added). An "actual practice of improper deductions" can demonstrate that the employer did not intend to compensate its employees on a salary basis. *Id.* Nevertheless, the assessment of an employer's intent requires "more than an arithmetic exercise." *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 458 (S.D.N.Y. 2008). The specific regulation at issue provides that "[i]mproper deductions that are *either* isolated *or* inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions." 29 C.F.R. § 541.603(c)(emphasis added). Because the adjectives "isolated" and "inadvertent" are separated by the word "or," the regulatory language must be construed to be disjunctive. *Chalmers v. Shalala*, 23 F.3d 752, 755 (3d Cir. 1994). In other words, improper deductions can be "inadvertent" even if they are not "isolated."

Where the evidence suggests that an employer has *intentionally* reduced the amount of an employee's paycheck because of partial-day absences, the employer cannot escape liability under the FLSA by claiming that the deductions were infrequent. *Scholtisek v. Eldre Corp.*, 697 F.Supp.2d 445, 453 (W.D.N.Y. 2010). The "window of correction" provided under § 541.603(c) is available only where "an employer has first demonstrated an intention to pay employees on a salary basis." *Saunders v. City of New York*, 594 F.Supp.2d 346, 362, n. 109 (S.D.N.Y. 2008). An employer cannot avoid the requirements of the FLSA by refusing to pay overtime to hourly employees and recharacterizing those employees as salaried employees after the commencement of a lawsuit. *Belcher v. Shoney's, Inc.*, 30 F.Supp.2d 1010, 1023-1024 (M.D.Tenn. 1998).

15

In order to establish the viability of their defense, the Defendants must prove each exemption requirement by a preponderance of the evidence. *Orton*, 668 F.3d at 847; *Davis v. Mountaire Farms, Inc.*, 598 F.Supp.2d 582, 586-587 (D.Del. 2009). Under the present circumstances, the Defendants must establish that Castellino received "a predetermined amount [of money] constituting all or part of [his] compensation," and that this amount was "not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). They must also demonstrate that the improper deductions identified by Castellino were "inadvertent." 29 C.F.R. § 541.603(c).

On the basis of the existing record, a reasonable trier of fact could conclude that Castellino received "a predetermined amount" of money for his work, and that his rate of pay was "not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). In his affidavit, Friday declared that Castellino had worked as a salaried foreman at a weekly rate of pay based on a calculated amount in excess of that provided to hourly workers under the collective bargaining agreement.[15] (Docket No. 38-1 at 1-2, ¶ 4). Castellino testified that his rate of pay had been higher than that specified in the collective bargaining agreement. (Docket No. 37-2 at 4). He explained that he had initially received payment for full days even after working partial days. (*Id.* at 5). The situation apparently changed after Virgilli became a project manager. (*Id.*). At some point, Virgilli and Friday instructed Castellino not to record more than eight hours per day on his timesheets. (*Id.* at 15). Castellino testified that when Virgilli was his project manager, he had received compensation only for the amount of time that he had actually worked, even if that amount of time was less than eight hours on a particular workday. (*Id.* at 14). Nevertheless, Castellino

---

[15] Under the Secretary's regulations, it is permissible for an employer to calculate a salaried employee's rate of pay on an "hourly" basis. 29 C.F.R. § 541.604(b).

consistently received vacation and holiday pay during the course of his employment with M.I. Friday. (*Id.* at 14). Friday stated in his affidavit that these benefits had not been available to hourly employees. (Docket No. 38-1 at 4, ¶ 8). When other factors suggest that an employee was paid on a salary basis, a large number of "payroll shortfalls" does not necessarily preclude an employer from establishing that the amount of the employee's pay was "predetermined." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 770-771 (6th Cir. 2006).

A reasonable trier of fact could also conclude that the improper deductions identified by Castellino were "inadvertent." 29 C.F.R. § 541.603(c). Castellino testified that he had not initiated the grievance procedures available to him under the collective bargaining agreement. (Docket No. 37-2 at 14). He further stated that he had never discussed the terms of his compensation with union officials. (*Id.* at 17). Nothing in the record suggests that Castellino called the matter to Friday's attention during the relevant period of time. Furthermore, the check for $1,155.14 provided to Castellino on March 17, 2010, could reasonably be viewed as an attempt to compensate him for "inadvertent" deductions. (Docket No. 43 at 9). In his "supplemental verification," Friday stated that the check had been issued to correct a "payroll error." (*Id.* at 2, ¶ 3). Even if the check did not fully compensate Castellino for the improper deductions, M.I. Friday is not precluded from relying on § 541.603(c)'s "window of correction" simply because an additional sum of money is still owed to Castellino. *Auer*, 519 U.S. at 463-464 (observing that the predecessor regulation "d[id] not address the timing of reimbursement," and that an employer could preserve its employee's exempt status "by complying with the corrective provision").

An exemption otherwise available under § 213(a) may be lost with respect to all employees under the supervision of a particular manager if the manager "routinely docks the

17

pay" of employees because of "partial-day personal absences." 29 C.F.R. § 541.603(b). During his deposition, Castellino suggested that Virgilli had been responsible for some of the deductions. (Docket No. 37-2 at 5-7). Nonetheless, the record is devoid of evidence pertaining to the manner in which other employees under Virgilli's supervision were paid. Moreover, Friday attributed the improper deductions to errors made by his "payroll clerk."[16] (Docket No. 43 at 2-3, ¶ 4). The extent to which Virgilli had supervisory authority over the payroll clerk cannot be gleaned from the record. The undeveloped state of the record counsels against the entry of summary judgment in this case.

The record contains evidence that could be interpreted in more than one way. For instance, Castellino testified that he had been instructed not to record more than eight hours per day on his timesheets.[17] (Docket No. 37-2 at 11). Although such an instruction could be viewed as an attempt to cover up M.I. Friday's alleged failure to pay Castellino overtime pursuant to the FLSA, it could also be viewed as an indication that he was never entitled to such overtime pay in the first place. The Defendants support their "inadvertence" defense by pointing out that Castellino never complained to union officials about the improper deductions. (Docket No. 49 at 2). If Castellino believed himself to be an hourly employee, however, he would have had no reason to complain about the deductions. In this respect, Castellino's silence could weigh in his favor. As discussed earlier, the written agreement setting forth the terms of Castellino's compensation cannot be located. (Docket No. 37-2 at 20; Docket No. 38-1 at ¶ 2). Under these

---

[16] Since Castellino recorded his own hours on timesheets that also listed the hours worked by hourly employees under his supervision, it is possible that M.I. Friday's payroll clerk mistakenly believed that Castellino was an hourly employee even if, under the terms of his agreement with Friday, he was to be paid on a "salary basis." (Docket No. 37-5 at 1-44).

[17] In the event that Castellino is found to have been an hourly employee during the course of his employment with M.I. Friday, his inability to precisely identify the amount of money owed to him will not preclude his receipt of monetary damages. *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991).

circumstances, the factual disputes between the parties should be resolved by a jury rather than on a motion for summary judgment. *Davis*, 453 F.3d at 558-559.

## V. Conclusion

For the foregoing reasons, Castellino's motion for summary judgment will be denied. (Docket No. 34). Because the Defendants have produced sufficient evidence to enable a reasonable trier of fact to conclude that Castellino was a salaried employee, Castellino is not entitled to a judgment as a matter of law. At trial, the Defendants will bear the burden of establishing the criteria necessary to place Castellino within § 213(a)'s exemption. *Orton*, 668 F.3d at 847.

By the Court:

s/Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: June 29, 2012

cc: All counsel of record